The Law Office of

# James M. Branden

551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

October 21, 2008

Hon. Sterling Johnson, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  United States v. Abad Elfgeeh
Cr. Docket No. 03-133 (SJ)

Dear Judge Johnson:

I represent Mr. Elfgeeh, who is to be resentenced in the above-referenced matter this Friday, October 24, 2008. I write in reply to the government's letter dated September 22, 2008.

Mr. Elfgeeh was originally sentenced in 2006, well before the Supreme Court's decisions in Kimbrough v. United States, 128 S.Ct. 558 (2007) and Gall v. United States, 128 S.Ct. 586 (2007). Those decisions have afforded district court judges broader authority to impose non-guidelines sentences. A recent example of the exercise of such authority can be found in United States v. Lennox Parris and Lester Parris, ___ F.Supp.2d ___, 2008 WL 3540151 (E.D.N.Y., Block, J.). In that securities-fraud case, Judge Block found that the guidelines "'have so run amok that they are patently absurd on their face,'" citing United States v. Adelson, 441 F.Supp.2d 506, 515 (S.D.N.Y. 2006).

Defendants Parris were found guilty after trial of securities fraud, witness tampering and related conspiracies for their involvement in the "pump and dump" of a penny stock and an effort to cover it up during an SEC investigation. Id. at *1. Enhancements to the base offense level of 7 were: 18 for more than $2.5 million gain; 6 for more than 250 victims; 2 for sophisticated

Hon. Sterling Johnson, Jr.
United States District Judge
October 21, 2008
Page 2


means; 4 because defendants were officers or directors of a publicly traded company; 3 for role as managers or supervisors; and 2 for obstruction based on the tampering. Id. at *2-4. The resulting total adjusted offense level was 42, corresponding to 360 months to life imprisonment, which Judge Block characterized as "draconian." Id. at *4-5.

Recognizing that the guidelines are the starting point and benchmark, Judge Block nonetheless found it "difficult for a sentencing judge to place much stock in a guidelines range that does not provide realistic guidance." Id. at *5. In ultimately imposing a sentence of just 5 years' imprisonment, Judge Block observed the following: 1) that the Parrises were not in the "same league" as the Enron, WorldCom and Computer Associates defendants; 2) that the current guideline scheme is significantly more punitive than in prior years (noting changes to the guidelines in 2001 and January 2003); and 3) that many of the enhancements for securities fraud had a "one-shoe-fits-all approach, which failed to account for differences among defendants once the initial threshold was met. Id. at *8-9. As to the difference between the guidelines and the sentence imposed, Judge Block "thank[ed]" the Supreme Court for recent changes in the law [see Gall v. United States, 128 S.Ct. 586, 594 (2007)] allowing district court judges to impose a sentence that varies from the guidelines based solely on disagreement with them, as long as they state the basis of the disagreement and justification for the variance." Id. at *9.

I urge this Court to join in Judge Block's respect for the change in the sentencing law and find, for all the reasons set forth in my letter dated September 15, 2008, that Mr. Elfgeeh is deserving of a downward variance from the suggested guidelines range of imprisonment.

In this regard, the Court may also consider that the government's principal argument in support of a guideline sentence is no longer valid. At the original sentence, the government said that it was "important" for the Court to know that Mohammed Al-Moayad, who had then recently been convicted of material support of terrorism, named Mr. Elfgeeh as someone who could get money to Al-Moayad in Yemen and that money "was going to support terrorism." Since then, indeed, just earlier this month, the Second Circuit reversed Mr. Al-Moayad's conviction based on the improper introduction of testimony concerning uncharged acts of terrorism (suicide bus bombing in Tel Aviv; a witness's participation in an

Hon. Sterling Johnson, Jr.
United States District Judge
October 21, 2008
Page 3


Al-Qaeda training camp in Afghanistan that Bin Laden visited) and other errors.  See United States v. Al-Moayad, ___ F.3d ___, 2008 WL 4443841 (2d Cir.).[1]

This Court has the authority and discretion to reconsider its own decision based on the intervening changes in the sentencing law.  See United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002).[2]  Especially in light of the reversal of the Al-Moayad conviction, upon which the government focused at the original sentencing, and all the other arguments previously submitted, this Court should exercise its discretion and impose a significant downward variance.

Finally, after a presentence investigation, the Department of Probation found that Mr. Elfgeeh does not have the resources to pay a fine in addition to the forfeiture, and therefore recommended no fine.  The government has not put forth any evidence to the contrary.  In addition, this Court appointed the undersigned as counsel under the CJA based on a financial affidavit executed by Mr. Elfgeeh, showing marginal assets and the enormous forfeiture debt.  It has already rightly concluded that Mr. Elfgeeh is indigent and therefore no fine should be imposed. See USSG §5E1.2, App. Note 3 ("the fact that a defendant is represented by (or was

---

[1] The Second Circuit's reversal of Al-Moayad's conviction further supports the redaction of paragraph 21 (page 11) of Mr. Elfgeeh's presentence report.  That paragraph chiefly describes allegations about Al-Moayad which are unproven (and which will be unreferenced at a retrial) and the government has repeatedly acknowledged that it cannot establish that Mr. Elfgeeh knowingly sent money for a terrorist cause.

[2] It seems obvious that in order to reconsider "its own" decision, the court can consider a change in the law from the date of the original sentence, not simply one that post-dates the remand order, as the government suggests in its letter of September 22. In any event, Quintieri makes clear that, even when a remand is limited, an issue can be raised if it arises as a result of events that occur "after the original sentence," citing United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000) allowing for a departure based on "intervening circumstances."  See United States v. Quintieri, 306 F.3d 1217, 1230 (2d Cir. 2002).

Hon. Sterling Johnson, Jr.
United States District Judge
October 21, 2008
Page 4


determined eligible for) assigned counsel are significant
indicators of present inability to pay any fine" and, along with
other factors, indicative of future inability to pay).


                        Respectfully submitted,



                        James M. Branden

cc:  AUSA Jeffrey Knox